**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MÁTAY GÁBOR, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> TRANSOCEAN LTD., JEREMY D. THIGPEN, MARK L. MEY, and THAD VAYDA, <br><br> Defendants. | Case No. 1:24-cv-09964-AT |
| DAVID MATTESON, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> TRANSOCEAN LTD., JEREMY D. THIGPEN, MARK L. MEY, and THAD VAYDA, <br><br> Defendants. | Case No. 1:25-cv-01112-UA |

**PATRICK KOCHER AND JOHN FOGEL'S OPPOSITION TO**
**COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF**
**AND APPROVAL OF LEAD COUNSEL**

Patrick Kocher and John Fogel, as Trustee of the John Fogel Revocable Trust (collectively, the "Transocean Investor Group" or "TIG") respectfully submit this memorandum of law in further support of their motion for consolidation of the above-captioned actions, appointment as lead plaintiff, and approval of lead counsel (Dkt. No. 16), and in opposition to the competing motions. *See* Dkt. Nos. 9, 13, 19.[1]

## I.    PRELIMINARY STATEMENT

Four movants filed competing motions for appointment as lead plaintiff and approval of lead counsel pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"): the Transocean Investor Group (Dkt. No. 16); John Mahoney ("Mahoney," Dkt. No. 13); David J. Grey  ("Grey," Dkt. No. 9); and Askel Matre ("Matre," Dkt. No. 19). However, Matre and Grey effectively abandoned their motions by filing withdrawals and/or notices that they do not oppose the competing motions. *See* Dkt. Nos. 25, 26.

With respect to the lead plaintiff determination, the question presently before the Court is which of these movants or groups of movants are the "most adequate plaintiff"—*i.e.*, the movant or group "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA directs courts to appoint the "most adequate plaintiff" as lead plaintiff, and provides a rebuttable presumption that the most adequate plaintiff is the movant or group with the "largest financial interest in the relief sought by the class" who otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

---

[1] All remaining movants consent to consolidation. As such, only the appointment of lead plaintiff and approval of lead counsel are addressed herein.

Here, the Transocean Investor Group has the largest financial interest as measured by every metric courts typically consider, including loss, gross shares purchased, net shares purchased, and net expenditure. As such the Transocean Investor Group is the presumptively most adequate plaintiff. Since no other movant can rebut the presumption, the Transocean Investor Group should be appointed as lead plaintiff and its selection of counsel should be approved.

## II.    ARGUMENT

### A.    The PSLRA-Mandated Procedure for Appointing a Lead Plaintiff

The PSLRA directs courts to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members," *i.e.*, the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(i).

The PSLRA provides a "rebuttable presumption" that the "most adequate plaintiff" is the movant or group that "has either filed the complaint or made a motion," "has the largest financial interest in the relief sought by the class," and "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii). After a presumptively most adequate plaintiff is identified, the Court must then determine if the presumption has been rebutted through "proof" by a member of the purported plaintiff class that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). If the presumption is not rebutted, the presumptively most adequate plaintiff should be appointed as lead plaintiff.

### B.    The Transocean Investor Group Is the Presumptively Most Adequate Plaintiff

The Transocean Investor Group satisfies all three requirements to be the presumptively most adequate plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). First, the Transocean Investor Group filed a timely motion for appointment as lead plaintiff. *See* Dkt. No. 16; 15 U.S.C. § 78u-

4(a)(3)(B)(iii)(I)(aa). Second, the Transocean Investor Group satisfies the requirements of Rule 23, as demonstrated in its memorandum of law in support of its lead plaintiff motion, and joint declaration. *See* Dkt. Nos. 17, 18-4; 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Finally, as explained *infra*, the Transocean Investor Group has the largest financial interest in the relief sought by the class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

Because the PSLRA does not specify a means of calculating the "largest financial interest," "the method used and the factors considered in determining each movant's financial interest remain fully within the discretion of the district court." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 406-07 (S.D.N.Y. 2004). In the absence of explicit guidance, courts have typically considered the following "*Lax* factors": (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered. *See, e.g.*, *Pirelli Armstrong*, 229 F.R.D. at 404 (*quoting Lax v. First Merchants Acceptance Corp.*, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997)).

In recent years, courts have used different methods to calculate the fourth *Lax* factor (loss). The methods include, among others, the Last-in, First-out ("LIFO") method, the Modified LIFO method,[2] and the *Canopy Growth* method articulated by Judge Engelmayer.[3] Both the Modified

---

[2] The Modified LIFO method is similar to the LIFO method except that all shares that were purchased and sold prior to a corrective disclosure are removed from the analysis since losses or gains on any such transactions are not tied to the fraud. *See Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 270 (S.D.N.Y. 2015) (holding that losses from sales prior to a corrective disclosure "are not recoverable under *Dura* and cannot be considered in calculating [movant's] losses").

[3] The *Canopy Growth* method, unlike LIFO, disregards losses from share price declines prior to the corrective disclosure since such price declines are not tied to the alleged fraud and are thus not recoverable. *See Turpel v. Canopy Growth Corp.*, 704 F. Supp. 3d 456, 470 (S.D.N.Y. 2023) ("A shareholder can recover only what he lost *as a result of disclosure of the false statement*.") (emphasis in original).

LIFO and *Canopy Growth* methods were designed to correct for the fact that the traditional LIFO method includes losses and gains that are not attributable to the fraud, and therefore not indicative of a movant's actual financial interest.

Here, the Transocean Investor Group has a larger loss than Mahoney as measured by both the Modified LIFO and *Canopy Growth* calculation methods, which reflect financial interest more accurately than strict LIFO:

| Movant | *Canopy Growth* Loss | LIFO Loss | Modified LIFO Loss |
|---|---|---|---|
| TIG Group Total | **$171,080** | $250,586 | **$431,323** |
| *Kocher* | *$20,540* | *$171,163* | *$180,623* |
| *Fogel* | *$150,540* | *$79,423* | *$250,700* |
| Mahoney | $43,767 | **$335,097** | $335,097 |

Notably, Mahoney purchased far fewer shares than the Transocean Investor Group, but at higher prices. As such, much of Mahoney's claimed LIFO loss is the result of Transocean's share price drifting downward prior to the corrective disclosure at the end of the class period. Such losses are not connected to the fraud because they were not caused by any alleged corrective disclosure, and therefore are not recoverable. *See Canopy Growth*, 704 F. Supp. 3d at 469 ("[B]ecause that drop preceded any corrective disclosure, it must, on the pleadings, be taken to reflect factors independent of any revelation of the fraud."). Similarly, because the Modified LIFO calculation considers losses and gains only on shares held at the time of a corrective disclosure, and the Transocean Investor Group held far more shares at the time of the alleged corrective disclosure, the group's Modified LIFO loss is larger than Mahoney's. Accordingly, the Transocean Investor Group has the largest loss and the largest financial interest.

Moreover, in situations like this, where "the fourth factor is heavily dependent on the method applied and numbers chosen to calculate losses," courts have found that "the first three [*Lax*] factors provide the most objective measurement of a movant's stake in the litigation" and

the "second factor – retained shares – to be the most determinative factor in approximating an investor's potential recovery." *Pio v. Gen. Motors Co.*, No. CIV. 14-11191, 2014 WL 5421230, at \*4 (E.D. Mich. Oct. 24, 2014); *see also In re Network Assocs., Inc. Sec. Litig.*, 76 F. Supp. 2d 1017, 1027 (N.D. Cal. 1999) (concluding net shares purchased should be used to determine financial interest as "the candidate with the most net shares purchased will normally have the largest potential damage recovery");[4] *In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102, 1108 (N.D. Cal. 2001) (finding net shares purchased "determinative" of financial interest).  Courts in this district are in accord. For example, when facing competing motions, Judge McMahon used net shares to determine which movant had the largest financial interest.  *Quan v. Advanced Battery Techs., Inc.*, 2011 WL 4343802, at \*2 (S.D.N.Y. Sept. 9, 2011) ("From the evidence presented to the Court, it is clear that Sanderson held the largest amount of retained shares at the end of the class period and therefore suffered the largest loss as compared with all movants.'); *see also Cortina v. Anavex Life Scis. Corp.*, 2016 WL 1337305, at \*2 (S.D.N.Y. Apr. 5, 2016) (where it was unclear which movant had the largest loss the court turned to net shares and net expenditures to determine financial interest).

Here, the Transocean Investor Group has, by far, the largest financial interest as measured by the first three *Lax* factors—gross shares purchased, net shares purchased, and net expenditure:

| Movant | Gross Shares Purchased | Net Shares Purchased | Net Expenditure |
|---|---|---|---|
| TIG Group Total | **3,265,158** | **347,400** | **$1,746,722** |
| *Kocher* | *63,400* | *47,400* | *$375,299* |
| *Fogel* | *3,201,758* | *300,000* | *$1,371,423* |
| Mahoney | 101,000 | 101,000 | $770,070 |

---

[4] The *Network* court further explained that where, as here, there is only one corrective disclosure, net shares is the preferred measure of financial interest since "all shares would have been inflated to the same extent" and therefore damaged to the same extent. *Network Assocs.*, 76 F. Supp. 2d at 1027.

Accordingly, the Transocean Investor Group has the largest financial interest in the relief sought by the class.

Since the Transocean Investor Group also filed a timely motion, and otherwise satisfies the relevant requirements of Rule 23, it is the presumptively the most adequate plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

**C.    The Presumption that the Transocean Investor Group Is the Most Adequate Plaintiff Has Not Been Rebutted**

The lead plaintiff presumption may be rebutted only upon "proof" that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class," or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). No proof has been presented that Transocean Investor Group would be inadequate or subject to unique defenses. In fact, both members of the group are sophisticated individuals, as reflected in their joint declaration filed with their lead plaintiff motion, and are well-equipped to jointly represent the class. *See* Dkt No. 18-4. As such, the Transocean Investor Group should be appointed as lead plaintiff, and no other movant is entitled to further consideration. *See Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 344 (S.D.N.Y. 2009) (the lead plaintiff process ends when "a candidate succeeds in both the first and second phases of inquiry").

**D.    The Transocean Investor Group's Selection of Counsel Should Be Approved**

The PSLRA vests authority in the lead plaintiff to select and retain counsel, subject to the approval of the Court, *see* 15 U.S.C. § 78u-4(a)(3)(B)(v), and "[t]here is a strong presumption in favor of approving a properly-selected lead plaintiff's decision as to counsel." *Topping v. Deloitte Touche Tohmatsu CPA*, 95 F. Supp. 3d 607, 623 (S.D.N.Y. 2015). Glancy Prongay & Murray LLP has the expertise, resources, and experience needed to efficiently and effectively conduct this

litigation. *See* Dkt. No. 18-5. By approving the Transocean Investor Group's selection of counsel, the Court will ensure that the class will receive the highest caliber of legal representation. As such, the Transocean Investor Group's selection of Glancy Prongay & Murray LLP should be approved.

## III.    CONCLUSION

For the foregoing reasons, the Transocean Investor Group respectfully requests that the Court enter an order: (1) consolidating the above-captioned actions, (2) appointing the Transocean Investor Group as lead plaintiff; (3) approving the Transocean Investor Group's selection of Glancy Prongay & Murray LLP as lead counsel for the class; and (4) denying the competing motions.

DATED: March 10, 2025

**GLANCY PRONGAY & MURRAY LLP**

By:   /s/ *Gregory B. Linkh*
Gregory B. Linkh (GL-0477)
230 Park Ave., Suite 358
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
glinkh@glancylaw.com

Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Patrick Kocher and John Fogel, as Trustee of the John Fogel Revocable Trust, and Proposed Lead Counsel for the Class*

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**
Eitan Kimelman
New York, NY
60 East 42nd Street, 46th Floor,
New York, New York 10165

7

Telephone: (212) 697-6484

*Additional Counsel*

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (310) 914-5007

*Additional Counsel*

8

## CERTIFICATE OF COMPLIANCE

The undersigned counsel for the Transocean Investor Group certifies that this brief contains 1,993 words, which complies with the word limit of L.R. 7.1(c).

/s/ Gregory B. Linkh
Gregory B. Linkh

9

**PROOF OF SERVICE**

I, the undersigned say:

I am not a party to the above case and am over eighteen years old.

On March 10, 2025, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Southern District of New York, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on March 10, 2025, at New York, New York.

*/s/ Gregory B. Linkh*
Gregory B. Linkh

10