**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MÁTAY GÁBOR, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>v.<br><br>TRANSOCEAN LTD., JEREMY D. THIGPEN, MARK L. MEY, and THAD VAYDA,<br><br>        Defendants. | Case No.: 1:24-cv-09964-AT<br><br>Hon. Analisa Torres |
| DAVID MATTESON, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>v.<br><br>TRANSOCEAN LTD., JEREMY D. THIGPEN, MARK L. MEY, and THAD VAYDA,<br><br>        Defendants. | Case No.: 1:25-cv-01112-AT<br><br>Hon. Analisa Torres |

**JOHN MAHONEY'S MEMORANDUM OF LAW IN REPLY**
**TO THE COMPETING MOTIONS FOR LEAD PLAINTIFF**

**TABLE OF CONTENTS**

**Page**

I.     PRELIMINARY STATEMENT ............................................................................... 1

II.    ARGUMENT ....................................................................................................... 3

    A.     Mr. Mahoney possesses the largest financial interest in this case. ............................. 3

    B.     Messrs. Kocher and Fogel are inadequate class representatives.................................. 6

        1.     The group is artificial and improper. ...................................................... 6

        2.     The use of multiple law firms is a red-flag. .......................................... 10

III.   CONCLUSION................................................................................................. 11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Atl. Power Corp. Sec. Litig.,*
No. 13-10537-DPW, 2014 U.S. Dist. LEXIS 199843 (D. Mass. Mar. 31, 2014) .................... 5

*Baxter v. MongoDB, Inc.*,
No. 1:24-cv-5191-GHW, 2024 U.S. Dist. LEXIS 205541 (S.D.N.Y. Nov. 12, 2024)............. 7

*City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*,
269 F.R.D. 291 (S.D.N.Y. 2010) ....................................................................................... 12

*City of Sunrise Firefighter's Pension Fund v. Citigroup Inc.*,
20-cv-9132 (AJN), et. al., 2021 U.S. Dist. LEXIS 21607 (S.D.N.Y. Feb. 4, 2021)............. 1, 3

*In re Donnkenny Inc. Sec. Litig.*,
171 F.R.D. 156 (S.D.N.Y. 1997) ......................................................................................... 8

*Elstein v. Net 1 UEPS Techs., Inc.,*
13 Civ. 9100 (ER), et. al., 2014 U.S. Dist. LEXIS 100574 (S.D.N.Y. July 23, 2014)........... 11

*In re eSpeed, Inc. Sec. Litig.*,
232 F.R.D. 95 (S.D.N.Y. 2005) ....................................................................................... 2, 6

*Goldberger v. PXRE Grp., Ltd.,*
Nos. 06-CV-3410 (KMK), et. al., 2007 U.S. Dist. LEXIS 23925 (S.D.N.Y. Mar. 30,
2007) .................................................................................................................................. 8

*Goldstein v. Puda Coal, Inc.*,
827 F. Supp. 2d 348 (S.D.N.Y. 2011)................................................................................... 9

*Khunt v. Alibaba Grp. Holding Ltd.,*
102 F. Supp. 3d 523 (S.D.N.Y. 2015)...................................................................... 2, 9, 10, 12

*In re Milestone Sci. Sec. Litig.,*
187 F.R.D. 165 (D.N.J. 1999)............................................................................................ 13

*Nakamura v. BRF S.A.*,
18-cv-2213 (PKC), 2018 U.S. Dist. LEXIS 110187 (S.D.N.Y Jul. 2, 2018) ..................... 9, 12

*Peters v. Twist Bioscience Corp.*,
Case No. 5:22-cv-08168-EJD, 2023 U.S. Dist. LEXIS 131228 (N.D. Cal. Jul. 28, 2023) ...... 4

*In re Ply Gem Holdings, Inc., Sec. Litig.,*
No. 14-CV-3577 (JPO), 2014 U.S. Dist. LEXIS 146402 (S.D.N.Y. Oct. 14, 2014)................ 8

*In re Razorfish, Inc. Sec. Litig.,*
    143 F. Supp. 2d 304 (S.D.N.Y. 2001) ................................................................................ 13

*Rodriguez v. Draftkings Inc.*,
    No. 21 Civ. 5739 (PAE), 2021 U.S. Dist. LEXIS 219489 (S.D.N.Y. Nov. 12, 2021) ............. 6

*Shupe v. Rocket Cos.*,
    601 F. Supp. 3d 214 (E.D. Mich. 2022) ................................................................................ 5

*Skeels v. Piedmont Lithium Inc.*,
    No. 21-CV-4161 (LDH) (PK), 2022 U.S. Dist. LEXIS 30705 (E.D.N.Y. Feb. 4, 2022) ......... 7

*Stires v. Eco Sci. Sols., Inc.*,
    17-3707(RMB/KMW), et. al., 2018 U.S. Dist. LEXIS 25088 (D.N.J. Feb. 14, 2018) .......... 10

*Takata v. Riot Blockchain, Inc.*,
    18-2293 (FLW) (TJB), et. al., 2018 U.S. Dist. LEXIS 189585 (D.N.J. Nov. 6, 2018) .......... 10

*Tan v. NIO Inc.*,
    19-CV-1424 (NGG) (VMS), et. al., 2020 U.S. Dist. LEXIS 36623 (E.D.N.Y. Mar. 3,
    2020) ................................................................................................................................... 11

*In re Tarragon Corp. Sec. Litig.*,
    07 Civ. 07972 (PKC), 2007 U.S. Dist. LEXIS 91418 (S.D.N.Y. Dec. 6, 2007) ...................... 8

*Tenneson v. Nikola Corp.*,
    No. CV-23-02131-PHX-DJH (DMF), 2024 U.S. Dist. LEXIS 39432 (D. Az. Feb. 29,
    2024) ..................................................................................................................................... 3

*In re Telxon Corp. Sec. Litig.*,
    67 F. Supp. 2d 803 (N.D. Ohio 1999) ................................................................................ 12

*Turpel v. Canopy Growth Corp.*,
    704 F. Supp. 3d 456 (S.D.N.Y. 2023) ................................................................................... 4

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
    589 F. Supp. 2d 388 (S.D.N.Y. 2008) ............................................................................. 2, 9

## I.    PRELIMINARY STATEMENT

Only two motions for lead plaintiff remain: (1) John Mahoney, and (2) Patrick Kocher and John Fogel, as Trustee of the John Fogel Revocable Trust.[1] Mr. Mahoney has the largest financial interest in the Actions because his recoverable losses are greater than any of the other movants for lead plaintiff (individually or combined) and he otherwise satisfies the typicality and adequacy requirements of Rule 23. *See* ECF No. 27 (Mahoney's Opposition Brief). Mr. Mahoney, therefore, is the presumptive lead plaintiff pursuant to the PSLRA and applicable case law.

Messrs. Kocher and Fogel raise a meritless argument in opposition to Mr. Mahoney's motion. Having had an opportunity to review each movant's "financial interest," they now present a different methodology (referred to as the *Canopy Growth* methodology) that purportedly elevates Messrs. Kocher and Fogel's aggregate loss above that of Mr. Mahoney's. Messrs. Kocher and Fogel's revised loss calculation strategy smacks of gamesmanship and is reason enough by itself to reject their motion. *See City of Sunrise Firefighter's Pension Fund v. Citigroup Inc.*, 20-cv-9132 (AJN), et. al., 2021 U.S. Dist. LEXIS 21607, *11 (S.D.N.Y. Feb. 4, 2021) ("courts are especially skeptical of a movant who initially presents one position in their opening brief and switch to another in their opposition after a new movant comes in alleging a greater loss"). But even if the Court were inclined to consider it, the case law makes clear that the *Canopy Growth* methodology does not apply to the facts at bar. Instead, the Court should follow the vast majority of cases from within this District holding that "financial interest" is best determined by reference to the movants'

---

[1] On March 10, 2025, movant David J. Grey filed a notice of withdrawal. *See* ECF No. 26. On the same day, movant Askel Matre filed a notice of non-opposition, stating that, "Matre does not have the "largest financial interest" in this litigation within the meaning of the PSLRA." *See* ECF No. 25.

respective last-in-first-out, or LIFO, losses. *See In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 101 (S.D.N.Y. 2005).

In any event, even if Messrs. Kocher and Fogel had a larger financial interest in the case (they do not), they fail to satisfy the adequacy requirements under Federal Rule of Civil Procedure 23, thereby rendering them incapable of serving as the lead plaintiff. They are a lawyer-driven group unable to satisfy the *Varghese* factors. *See Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008) (holding that investor groups must justify their appointment by satisfying certain criteria). Their joint declaration and opposition brief fail to provide any background information of how the group was formed or how the appointment of their group as lead plaintiff could be more beneficial than appointing Mr. Mahoney. *See* ECF Nos. 18-4 and 28 (Messrs. Kocher and Fogel's Joint Declaration and Opposition Brief). The number of law firms purportedly retained by Messrs. Kocher and Fogel exacerbates the issue. They provide no explanation as to who would be doing what or how they intend to monitor their counsels' work (which is comprised of lawyers at three different firms—Glancy Prongay & Murray LLP, Bronstein, Gewirtz & Grossman, LLC, and The Law Offices of Frank R. Cruz). *See* ECF Nos. 17 and 28 (Messrs. Kocher and Fogel's Opening and Opposition Briefs). *See Khunt v. Alibaba Grp. Holding Ltd.,* 102 F. Supp. 3d 523, 540 (S.D.N.Y. 2015) ("the mushrooming presence of ever-more attorneys in a case more often serves to delay than to expedite the just and efficient administration of justice. It also tends to increase costs.").

Mr. Fogel's transaction history adds to the group's overall inadequacy. With sporadic trading patterns (*e.g.*, buying and selling 50,000 shares of Transocean twice within a week in February 2024) and retaining only a fraction of the approximately 3.2 million shares he purchased during the Class Period, Mr. Fogel is atypical of the class and inadequate to serve as a class

2

representative. *See* ECF No. 18-3 (Messrs. Kocher and Fogel's Loss Chart). No such complications arise in the context of Mr. Mahoney's motion. In fact, Messrs. Kocher and Fogel do not challenge Mr. Mahoney's losses, adequacy, typicality or ability to oversee the litigation. Accordingly, for these reasons, Mr. Mahoney respectfully requests that the Court grant his motion in its entirety and deny the competing motions.

## II.     ARGUMENT

### A.     Mr. Mahoney possesses the largest financial interest in this case.

Messrs. Kocher and Fogel claim to have the largest financial interest under the *Canopy Growth* methodology. *See* ECF No. 28 (the Opposition Brief of Messrs. Kocher and Fogel). Their decision to raise this methodology comes only *after* Messrs. Kocher and Fogel realized their losses were not sufficient to win the day. *See Citigroup Inc.*, 2021 U.S. Dist. LEXIS 21607, *11 ("courts are especially skeptical of a movant who initially presents one position in their opening brief and switch to another in their opposition after a new movant comes in alleging a greater loss") (collecting cases); *see also Tenneson v. Nikola Corp.*, No. CV-23-02131-PHX-DJH (DMF), 2024 U.S. Dist. LEXIS 39432, *20 (D. Az. Feb. 29, 2024) ("courts in various districts across the country have disapproved of lead plaintiff movants changing their calculation methodology and loss analysis after all movants have submitted motions to be appointed lead plaintiff […] Courts have applied 'increased scrutiny' to such revised calculations."); *Peters v. Twist Bioscience Corp.*, Case No. 5:22-cv-08168-EJD, 2023 U.S. Dist. LEXIS 131228, *12 (N.D. Cal. Jul. 28, 2023) ("District courts across the country have uniformly disapproved of such gamesmanship in PSLRA lead plaintiff motions, whereby movants revise their loss analysis after seeing what other competing movants have submitted.").

In any event, the *Canopy Growth* methodology should not be applied here. In *Canopy Growth*, the court discounted one of the competing movant's losses because they arose from

3

purchases early in the class period at prices that were significantly above the stock price at the end of the class period. The court held that a substantial portion of this movant's losses would therefore not be recoverable and should not be considered when evaluating financial interests. *See Turpel v. Canopy Growth Corp.*, 704 F. Supp. 3d 456, 469-70 (S.D.N.Y. 2023). As the court explained, one movant (Nguyen) purchased "[n]early all" of his shares "between mid-August and early November 2021, when Canopy's share price was above $11" while the other movant (Li) purchased the "vast majority" of his shares "between mid-May and mid-July 2022, *after* Canopy growth's share price had already dropped significantly . . . when Canopy traded between $2 and $6 a share." *Id*.

Messrs. Kocher and Fogel rely on *Canopy Growth* to recalculate their "financial interests" in the litigation from "LIFO Loss" to the "*Canopy Growth* Loss" and "Modified LIFO Loss," as follows:

| Movant | *Canopy Growth* Loss | LIFO Loss | Modified LIFO Loss |
|---|---|---|---|
| TIG Group Total | **$171,080** | $250,586 | **$431,323** |
| *Kocher* | *$20,540* | *$171,163* | *$180,623* |
| *Fogel* | *$150,540* | *$79,423* | *$250,700* |
| Mahoney | $43,767 | **$335,097** | $335,097 |

ECF No. 28 at 4 (chart from opposition brief). Messrs. Kocher and Fogel do not provide any underlying support demonstrating how the *Canopy Growth* methodology results in the above numbers, *i.e.* how or why their "loss" changes from $250,586 to $171,080 or Mr. Mahoney's loss decreases from $335,097 to $43,767. Even more problematic is that the *Canopy Growth* methodology appears to *decrease* Mr. Kocher's losses from $171,163 to $20,540 yet there is nothing in the record from Mr. Kocher to show that he supported the revised calculation or otherwise attesting to the new approach in terms of valuing damages among class members. *See*

4

*Shupe v. Rocket Cos.*, 601 F. Supp. 3d 214, 219-220 n.2 (E.D. Mich. 2022) (disqualifying lead plaintiff movant where court was unable to "determine the reliability of the [movant's] losses-suffered calculation"); *In re Atl. Power Corp. Sec. Litig.*, No. 13-10537-DPW, 2014 U.S. Dist. LEXIS 199843, at *7 n.1 (D. Mass. Mar. 31, 2014) (noting failure to provide a loss analysis "bespeaks a less than full commitment to transparency in providing the court with information that it ultimately would require to make its decision"). Decreasing Mr. Kocher's losses by such an extreme amount appears contrary to his interests, thereby necessitating some explanation or showing of permission from the client.

Moreover, unlike *Canopy Growth*, the movants at bar bought their shares at relatively consistent price levels. Mr. Mahoney purchased in September and October 2023 at $8.27 per share and $6.64 per share, respectively. *See* ECF No. 15-2. Mr. Kocher also purchased in September and October 2023 and at prices between $7.63 per share and $8.31 per share. *See* ECF No. 18-3. Mr. Fogel purchased at different dates and times but also then immediately sold the shares for profits at times, rendering his losses tenuous at best given the apparent lack of reliance on Transocean's public statements. *See Rodriguez v. Draftkings Inc.*, No. 21 Civ. 5739 (PAE), 2021 U.S. Dist. LEXIS 219489, at *19-20 (S.D.N.Y. Nov. 12, 2021) ("that Kaintz was a day trader—one who bought and sold DraftKings stock repeatedly even on single trading days . . . could indicate that Kaintz traded based on daily market volatility rather than reliance on defendants' alleged misrepresentations. And that possibility . . . exposes Kaintz's claims to unique defenses that, win or lose, would distract from the litigation and sap his effectiveness on behalf of the class."). Consequently, without the stark discrepancy in purchase prices that existed between the competing movants in *Canopy Growth*, there is no reason to alter the analysis from the standard LIFO loss calculation. *See id*. at *12 ("The overwhelming trend both in this District and nationwide has been

5

to use LIFO to calculate such losses."); *see also In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. at 101 ("LIFO, by contrast, has been used not only for lead plaintiff calculations, but also to determine compensation amounts for stockholders suffering losses due to securities fraud.").

Messrs. Kocher and Fogel also propose a "Modified LIFO" calculation, which is likewise contrived and unsupported by the law. Although they did not provide a calculation or any underlying documentation to demonstrate how it works, it has the convenient benefit of artificially inflating Mr. Fogel's loss from $79,423 to $250,700. *See* ECF No. 28 at 4. The increase appears to be attributable to the *exclusion* of Mr. Fogel's *profits* from in-and-out transactions, meaning that Mr. Fogel is being permitted to keep the profits he made while day-trading Transocean stock. Again, this alteration does not appear to have been approved by either of the clients; Mr. Kocher in particular would not likely have agreed to this if consulted because his ultimate distribution will now be minimized as a result of in-and-out traders like Mr. Fogel being able to claim greater losses than they otherwise should be entitled to. Indeed, the case law clearly holds that *intra*-class period gains should offset any losses when evaluating financial interest. *See Baxter v. MongoDB, Inc.*, No. 1:24-cv-5191-GHW, 2024 U.S. Dist. LEXIS 205541, at *10 (S.D.N.Y. Nov. 12, 2024) (collecting cases); *see also Skeels v. Piedmont Lithium Inc.*, No. 21-CV-4161 (LDH) (PK), 2022 U.S. Dist. LEXIS 30705, at *13 (E.D.N.Y. Feb. 4, 2022) ("*Dura* does not state any basis for excluding profits derived from selling shares before disclosure of the misconduct. After all, sales resulting in gains do not constitute a harm . . . .").

### B. Messrs. Kocher and Fogel are inadequate class representatives.

#### 1. *The group is artificial and improper.*

Messrs. Kocher and Fogel's motion suffers from additional flaws. Unrelated groups of investors with multiple lawyers should not be appointed to serve as lead plaintiff. *See In re Ply Gem Holdings, Inc., Sec. Litig.,* No. 14-CV-3577 (JPO), 2014 U.S. Dist. LEXIS 146402, at *5

6

(S.D.N.Y. Oct. 14, 2014*)* ("[j]oint lead plaintiffs run counter to the purposes of the PSLRA, which seeks to avoid "lawyer-driven litigation"); *Goldberger v. PXRE Grp., Ltd.,* Nos. 06-CV-3410 (KMK), et. al., 2007 U.S. Dist. LEXIS 23925, at *14 (S.D.N.Y. Mar. 30, 2007) ("one cannot but suspect that the Campfield Group--comprised, as it is, of disparate and apparently unrelated plaintiffs--is itself the result of the type of lawyer-driven action that the PSLRA eschews."); *In re Tarragon Corp. Sec. Litig.*, 07 Civ. 07972 (PKC), 2007 U.S. Dist. LEXIS 91418, at *3-6 (S.D.N.Y. Dec. 6, 2007) ("to enjoy the rebuttable presumption that the statute confers, there must be some evidence that the members of the group will act collectively and separately from their lawyers.") (collecting cases); *In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 157-58 (S.D.N.Y. 1997).

A group can act as lead plaintiff if it can show the following factors: "(1) the existence of a pre-litigation relationship between group members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa." *Varghese*, 589 F. Supp. 2d at 392; *accord Khunt,* 102 F. Supp. 3d 523, 533. Additionally, when evaluating a group's cohesiveness, courts will consider:

> why the individual members chose to work as a group; how the group intends to function collectively, including how they plan to communicate; the protocol the group will use to address disagreements; background information regarding individual members of the group; and the members' willingness to accept the role and responsibilities of lead plaintiff.

*Goldstein v. Puda Coal, Inc.*, 827 F. Supp. 2d 348, 356 (S.D.N.Y. 2011).

Messrs. Kocher and Fogel have submitted a Joint Declaration with their motion. *See* ECF No. 18-4. The Joint Declaration is riddled with red flags. First, the Joint Declaration is devoid of any discussion concerning the pre-existing relationship of Messrs. Kocher and Fogel. The fact that

a group was created with no pre-existing relationship prior to the commencement of the Actions shows that Messrs. Kocher and Fogel were clumped together in an attempt by counsel to create the largest financial interest.

Second, the Joint Declaration is silent as to how or why the individual group members ultimately decided to or selected each other to form the "Transocean Investor Group." *See Nakamura v. BRF S.A.*, 18-cv-2213 (PKC), 2018 U.S. Dist. LEXIS 110187, *10 (S.D.N.Y Jul. 2, 2018) ("The silence on this point raises the possibility" – indeed, strong likelihood – "that the Soares group's motion was 'assembled as makeshift by attorneys' in order to claim the greatest financial interest in the outcome of the case."); *Takata v. Riot Blockchain, Inc.,* 18-2293 (FLW) (TJB), et. al., 2018 U.S. Dist. LEXIS 189585, *14-15 (D.N.J. Nov. 6, 2018) (stating that the "Court has serious concerns regarding how these Plaintiffs will monitor their proposed counsel such that they can adequately represent the class" considering that the "group is made . . . up of three seemingly unconnected strangers from across the count[r]y"); *Stires v. Eco Sci. Sols., Inc.,* 17-3707(RMB/KMW), et. al., 2018 U.S. Dist. LEXIS 25088, *15 (D.N.J. Feb. 14, 2018) ("What the Joint Declaration does not provide, and what is conspicuously absent, is any information regarding how these five apparent strangers from different states found each other."). Each of these points leads to the obvious conclusion that counsel selected Messrs. Kocher and Fogel to move as a group. *See Khunt*, 102 F. Supp. 3d at 534 (the group appeared to be "nothing more than a lawyer-created group of unrelated investors who were cobbled together" for lead plaintiff purposes).

Third, Messrs. Kocher and Fogel fail to explain how the formation of the group would best serve the class and provides no information as to why the Transocean Investor Group was formed. The Joint Declaration only states that, "[t]hrough our discussions with each other and counsel we decided to collectively move for appointment as lead plaintiff in this securities class action and to

8

propose GPM as lead counsel for the class." *See* ECF No. 18-4, ¶5 (Messrs. Kocher and Fogel's Joint Declaration). Moreover, the Joint Declaration does not specify any benefit to the Class by having Messrs. Kocher and Fogel serve as the Lead Plaintiff. *Id*. Absent the showing of any particular benefit to the class over Mr. Mahoney, Messrs. Kocher and Fogel run afoul of the PSLRA. *See Elstein v. Net 1 UEPS Techs., Inc.,* 13 Civ. 9100 (ER), et. al., 2014 U.S. Dist. LEXIS 100574, *18 (S.D.N.Y. July 23, 2014) ("despite Lipow and Elstein's assurances that they are united in their goals and objectives and are willing and able to serve the Class, that is not enough to succeed on a lead plaintiff motion. Indeed, without more information, there is reason for Defendants' concern that this group has simply been 'cobbled together' for the purpose of achieving the lead plaintiff designation. Defs. Opp. 8. Accordingly, the Court cannot grant Plaintiffs' motion."); *Tan v. NIO Inc.,* 19-CV-1424 (NGG) (VMS), et. al., 2020 U.S. Dist. LEXIS 36623, *14-15 (E.D.N.Y. Mar. 3, 2020) (denying appointment of a group for failure to provide a "compelling showing" that they will be able to work cohesively for the benefit of the class).

Fourth, the Joint Declaration fails to show any involvement of these individuals collectively in the litigation beyond email correspondence and a conference call. The Joint Declaration merely provides that they determined to seek appointment as lead plaintiff jointly based on their respective conversations with counsel and that they held a joint conference call with their counsel. Joint Declaration, ¶5. This one conference call does not support the aggregation of the Transocean Investor Group members' losses. *See Khunt*, 102 F. Supp. 3d at 533 (noting only one group conference call regarding litigation does not support aggregation); *Nakamura*, 2018 U.S. Dist. LEXIS 110187 *8-9 (finding that the group's "'involvement . . . in the litigation thus far' appears to be minimal.").

Fifth, the Joint Declaration's content itself is troubling as to how the members of the Transocean Investor Group plan to oversee the litigation. Notably, they have stated that they "have agreed to exercise joint decision making," but have provided vague assurances as to how this will work in the event that a consensus is not reached. In fact, it appears extremely unlikely that they have exercised any oversight during the course of this motion, given the alternative loss calculations proposed by their counsel. As explained above, Mr. Kocher stands to recover substantially less than he did just a few weeks ago when he purportedly agreed to move for lead plaintiff. Meanwhile, Mr. Fogel, an in-and-out trader subject to unique defenses, may potentially recover materially more than he ought to under the law if allowed to exclude intra-class period gains. This conflict between the two group members raises concerns especially in the face of weak oversight and imprecise dispute-resolution mechanisms. Thus, their appointment could bring an unnecessary burden to the Class. *See, e.g., City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*, 269 F.R.D. 291, 294 n.5 (S.D.N.Y. 2010) (finding purported benefits "no more plausible than a situation where disagreements within the lead plaintiff appointees end up disadvantaging the class."); *see In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 815 (N.D. Ohio 1999) (discussing the additional cost, expenses, and issues with having a larger group serve as the Lead Plaintiff); a*ccord In re Razorfish, Inc. Sec. Litig.,* 143 F. Supp. 2d 304, 309 (S.D.N.Y. 2001).

### 2.     *The use of multiple law firms is a red-flag.*

Messrs. Kocher and Fogel have neglected to offer any justification for the presence of multiple law firms. *See* ECF Nos. 17 and 28. Curiously enough, they only mention the qualifications of Glancy Prongay & Murray LLP, without so much as mentioning the role or qualifications of Bronstein, Gewirtz & Grossman, LLC or The Law Offices of Frank R. Cruz, who are listed as "Additional Counsel." The absence of any articulated reason behind the need for

10

multiple law firms further evidences Messrs. Kocher and Fogel's lawyer-driven inadequacy. *See In re Milestone Sci. Sec. Litig.,* 187 F.R.D. 165, 177 (D.N.J. 1999) (rejecting proposed multiple counsel structure, explaining, "where several lead counsel are appointed, there is the potential they may ultimately seize control of the litigation, an occurrence the PSLRA intended to foreclose. . . . Accordingly, those seeking the appointment of several lead counsel must demonstrate the lead plaintiff will be able to withstand any limitation on, or usurpation of, control, and effectively supervise the several law firms acting as lead counsel.").

## III.   CONCLUSION

For the foregoing reasons, Mr. Mahoney respectfully requests that the Court grant his Motion and enter an Order: (1) appointing Mr. Mahoney as Lead Plaintiff, (2) approving his selection of Levi & Korsinsky as Lead Counsel for the Class, and (3) granting such other relief as the Court may deem just and proper.

Dated: March 17, 2025                    Respectfully Submitted,

**LEVI & KORSINSKY, LLP**

By: */s/ Adam M. Apton*
Adam M. Apton (AS-8383)
33 Whitehall Street, 17th Floor
New York, NY 10004
Tel: (212) 363-7500
Fax: (212) 363-7171
Email: aapton@zlk.com

*Lead Counsel John Mahoney and
[Proposed] Lead Counsel for the Class*

11

## WORD COUNT CERTIFICATION

Pursuant to Rule III(D) of the Individual Practices in Civil Cases of the Honorable Analisa Torres, I hereby certify that this memorandum of law contains 3,400 words, exclusive of the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates.

/s/ Adam M. Apton
Adam M. Apton