# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MÁTAY GÁBOR, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> TRANSOCEAN LTD., JEREMY D. THIGPEN, MARK L. MEY, and THAD VAYDA, <br><br> Defendants. | Case No. 1:24-cv-09964-AT |
| DAVID MATTESON, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> TRANSOCEAN LTD., JEREMY D. THIGPEN, MARK L. MEY, and THAD VAYDA, <br><br> Defendants. | Case No. 1:25-cv-01112-AT |

**PATRICK KOCHER AND JOHN FOGEL'S REPLY MEMORANDUM IN FURTHER SUPPORT OF THEIR MOTION FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD COUNSEL**

Patrick Kocher and John Fogel, as Trustee of the John Fogel Revocable Trust (collectively, the "Transocean Investor Group" or "TIG") respectfully submit this reply memorandum of law in further support of their motion for consolidation of the above-captioned actions, appointment as lead plaintiff, and approval of lead counsel (Dkt. No. 16), and in response to the opposition filed by John Mahoney ("Mahoney") (Dkt. No. 27, "Mahoney Opp.").[1] The Transocean Investor Group should be appointed as lead plaintiff and its selection of counsel should be approved because it has the largest financial interest and is adequate to represent the class.

## I.  THE TRANSOCEAN INVESTOR GROUP HAS THE LARGEST FINANCIAL INTEREST

Only Mahoney filed an opposition to the Transocean Investor Group's lead plaintiff motion. However, Mahoney does not contest, and therefore concedes, that the Transocean investor group has a larger financial interest than Mahoney as measured by 3 of the 4 factors courts typically consider. *See Cabrera v. Tahoe Res. Inc.*, 2017 WL 11569560, at *2 (S.D.N.Y. Sept. 26, 2017) ("When determining which class member has the 'largest financial interest' in a securities fraud class action, 'a court considers four factors: (i) the gross number of shares purchased; (ii) the net number of shares purchased; (iii) the net funds spent; and (iv) the net loss.'") (citation omitted).

| Movant | Gross Shares Purchased | Net Shares Purchased | Net Expenditure |
|---|---|---|---|
| TIG Group Total | **3,265,158** | **347,400** | **$1,746,722** |
| *Kocher* | *63,400* | *47,400* | *$375,299* |
| *Fogel* | *3,201,758* | *300,000* | *$1,371,423* |
| Mahoney | 101,000 | 101,000 | $770,070 |

---

[1] All movants consent to consolidation. As such, only the appointment of lead plaintiff and approval of lead counsel are addressed herein.

1

In fact, Fogel alone purchased more shares than Mahoney, retained approximately three times as many shares as Mahoney, and expended $601,353 more than Mahoney. As such, the Transocean Investor Group has the largest financial interest as measured by the first three factors.

With respect to the fourth factor, different movants have the largest loss depending on which method is used—and the Transocean Investor Group has the largest loss as calculated by 2 of the 3 methods accepted in this District:

| Movant | *Canopy Growth* Loss | LIFO Loss | Modified LIFO Loss |
|---|---|---|---|
| TIG Group Total | **$171,080** | $250,586 | **$431,323** |
| *Kocher* | *$20,540* | *$171,163* | *$180,623* |
| *Fogel* | *$150,540* | *$79,423* | *$250,700* |
| Mahoney | $43,767 | **$335,097** | $335,097 |

Notably, Fogel alone has a larger *Canopy Growth* loss than Mahoney—which is the method designed to exclude unrecoverable pre-disclosure price declines from the loss calculation. And the Transocean Investor Group collectively has a larger Modified LIFO loss than Mahoney—which is the method designed to exclude shares not held at the time of a corrective disclosure from the loss calculation. As such, the Transocean Investor Group has a larger loss (and therefore a larger financial interest) than Mahoney under the two methods designed to correct for the LIFO calculation's inclusion of unrecoverable losses.

Moreover, where different movants claim the largest loss based on different calculation methods (as here), the first three factors carry more weight. *See Pio v. Gen. Motors Co.*, 2014 WL 5421230, at *4-*5 (E.D. Mich. Oct. 24, 2014) (relying on the first three factors to determine financial interest where both movants claimed the largest loss, reasoning "the first three factors provide the most objective measurement of a movant's stake in the litigation because the fourth factor is heavily dependent on the method applied").

Considering all four factors, the Transocean Investor Group has the largest financial interest. Since the Transocean investor group also filed a timely motion and made the required preliminary showing of its typicality and adequacy, the Transocean Investor Group is the presumptively most adequate plaintiff to be appointed as lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

## II.    THE PRESUMPTION THAT THE TRANSOCEAN INVESTOR GROUP IS THE MOST ADEQUATE PLAINTIFF HAS NOT BEEN REBUTTED

The presumption that the Transocean Investor Group is the most adequate plaintiff may be rebutted only upon "proof" that the Transocean Investor Group "will not fairly and adequately protect the interests of the class," or "is subject to unique defenses that render [it] incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Speculation and conclusory assertions are insufficient. *See Foley v. Transocean Ltd.*, 272 F.R.D. 126, 133 (S.D.N.Y. 2011); *Constance Sczesny Tr. v. KPMG LLP*, 223 F.R.D. 319, 324-25 (S.D.N.Y. 2004) (similar); *see also Murphy v. JBS S.A.*, 2017 WL 4480751, at *5 (E.D.N.Y. Oct. 6, 2017) ("Conclusory assertions and mere speculation will not suffice."). Proof demands "specific support" and "evidence" of the "actual or potential conflict of interest or a defense." *Constance*, 223 F.R.D. at 324-25; *Vladimir v. Bioenvision, Inc.*, 2007 WL 4526532, at *10 (S.D.N.Y. Dec. 21, 2007) (same).

Mahoney attacks the Transocean Investor Group's adequacy on two bases. First, Mahoney argues that Kocher and Fogel are not "capable of working together as a small group" on the basis that their joint declaration (Dkt. No. 18-4, the "Joint Declaration") "does not pass muster under the *Varghese* factors." Mahoney Opp. at 7. Second, Mahoney argues that Fogel is inadequate to represent the class because he "traded large blocks of shares over very short periods of time." *Id.* at 8. Both attacks fail.

3

A.    **The Transocean Investor Group Is An Adequate Group Under *Varghese***

"[C]ourts have considered five factors in deciding whether a group of investors will function cohesively and separately from their lawyers: '(1) the existence of a pre-litigation relationship between group members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa.'" *Chahal v. Credit Suisse Grp. AG*, 2018 WL 6803377, at *2 (S.D.N.Y. Aug. 27, 2018) (summarizing *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008)). Moreover, groups "with only five members" are "presumptively cohesive," even when the members "have no pre-litigation relationship." *Simmons v. Spencer*, 2014 WL 1678987, at *5 (S.D.N.Y. Apr. 25, 2014).

Here, while Kocher and Fogel do not have a pre-litigation relationship, every other *Varghese* factor weighs in their favor as they have been actively involved in the litigation thus far, have a plan for cooperation, are sophisticated individuals, and chose their counsel. Kocher and Fogel submitted a joint declaration explaining that they separately "reached out to counsel seeking representation" and "expressed a desire to seek appointment as lead plaintiff individually or with other investors." Joint Declaration ¶ 4. They also "held a conference call with each other and with Glancy Prongay & Murray LLP . . . to discuss filing a joint motion for appointment as lead plaintiff." *Id.* ¶ 5. They "reviewed the respective responsibilities of counsel and lead plaintiff" and "discussed a protocol for maintaining regular contact with each other and with counsel" to facilitate "effective and efficient . . . decision-making during the litigation." *Id.* They have also committed to "work with lead counsel to obtain the largest possible recovery for the putative class in good faith and with vigorous advocacy." *Id.* ¶ 7. Moreover, Kocher and Fogel are sophisticated individuals. Kocher was in the military, is a maintenance manager for a foundry, and has been managing his investments for approximately a decade. *See id.* ¶ 2. Fogel has a Master of Fine Arts

4

degree and has been managing his investments for approximately three decades. *See id.* ¶ 3. Accordingly, at least four of the five *Varghese* factors weigh in favor of finding that the Transocean Investor Group is cohesive and capable of acting apart from their counsel. *See Credit Suisse*, 2018 WL 6803377, at *2 (approving the appointment of a group that submitted a similar joint declaration even though "its members had no pre-existing relationship"); *Hansen v. Ferrellgas Partners, L.P.*, 2017 WL 281742, at *6 (S.D.N.Y. Jan. 19, 2017) (similar). As such, Mahoney has failed to rebut the presumption that the Transocean Investor Group is the most adequate plaintiff.

### B.    Fogel's Trading Is Not Disqualifying

Buying and selling shares during the class period does not render Fogel inadequate. In fact, Mahoney does not identify any unique defense that could arise from buying and selling shares generally, nor Fogel's trading in particular. While Mahoney points out that "Fogel ultimately retained only 300,000 shares," *see* Mahoney Opp. at 8, that is nearly three times as many shares as Mahoney retained. Moreover, the single case Mahoney cites in support of his position actually favors Fogel. *See* Mahoney Opp. at 8 (citing *Rodriguez v. DraftKings Inc.*, 2021 WL 5282006 (S.D.N.Y. Nov. 12, 2021)). The *DraftKings* court disqualified a movant based on his "short-selling and day trading," but found that the movant's practice of  "fully exit[ing]" his stock position multiple times during the class period was "not . . . alone dispositive of . . . inadequacy." Indeed, courts have appointed movants that exited and reinvested during the class period. *See Sklar v. Amarin Corp. PLC*, 2014 WL 3748248, at *9 (D.N.J. July 29, 2014) (appointing a movant that "completely divested . . . twice in the first quarter of 2011" because he "subsequently reinvested" and held shares "at the end of the class period, at the time of [the company's] corrective disclosures"); *see also Gilbert v. Azure Power Glob. Ltd.*, 2022 WL 17539172, at *6 (S.D.N.Y. Dec. 8, 2022) (appointing a movant that "engaged in multiple transactions buying and selling Azure stock throughout the class period" including once on the same day and "a few transactions

5

that occurred days apart"). As such, Mahoney has failed to rebut the presumption that the Transocean Investor Group is the most adequate plaintiff.

## III.    CONCLUSION

For the foregoing reasons, the Transocean Investor Group respectfully requests that the Court appoint it as lead plaintiff, and approve its selection of Glancy Prongay & Murray LLP  as lead counsel for the class.

DATED: March 17, 2025                                **GLANCY PRONGAY & MURRAY LLP**

By:   /s/ Gregory B. Linkh
Gregory B. Linkh (GL-0477)
230 Park Ave., Suite 358
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
glinkh@glancylaw.com

Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Patrick Kocher and John Fogel, as Trustee of the John Fogel Revocable Trust, and Proposed Lead Counsel for the Class*

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**
Eitan Kimelman
60 East 42nd Street, 46th Floor,
New York, New York 10165
Telephone: (212) 697-6484

*Additional Counsel*

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
1999 Avenue of the Stars, Suite 1100

6

Los Angeles, CA 90067
Telephone: (310) 914-5007

*Additional Counsel*

## CERTIFICATE OF COMPLIANCE

The undersigned counsel for the Transocean Investor Group certifies that this brief contains 1,613 words, which complies with the word limit of L.R. 7.1(c).

*/s/ Gregory B. Linkh*
Gregory B. Linkh

**PROOF OF SERVICE**

I, the undersigned say:

I am not a party to the above case and am over eighteen years old.

On March 17, 2025, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Southern District of New York, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on March 17, 2025, at New York, New York.

/s/ Gregory B. Linkh
Gregory B. Linkh

9