```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/23/2025
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MÁTAY GÁBOR, Individually and on Behalf of All Others Similarly Situated,

    Plaintiff,

-against-

TRANSOCEAN LTD., JEREMY D. THIGPEN, MARK L. MEY, and THAD VAYDA,

    Defendants.

24 Civ. 9964 (AT)

DAVID MATTESON, Individually and on Behalf of All Others Similarly Situated,

    Plaintiff,

-against-

TRANSOCEAN LTD., JEREMY D. THIGPEN, MARK L. MEY, and THAD VAYDA,

    Defendants.

25 Civ. 1112 (AT)

**ORDER**

ANALISA TORRES, District Judge:

    Plaintiffs, Mátay Gábor and David Matteson, filed securities class actions against Defendants, Transocean Ltd. ("Transocean"), Transocean Chief Executive Officer Jeremy D. Thigpen, former Transocean Chief Financial Officer Mark L. Mey, and current Transocean Chief Financial Officer Thad Vayda, bringing claims under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a *et seq. See generally* Gábor Compl., ECF No. 1;[1] Matteson Compl., ECF No. 1 in 25 Civ. 1112. Before the Court are motions to consolidate the two cases and to appoint lead plaintiff and lead counsel. ECF Nos. 9, 13, 16, 19. For the reasons

---

[1] Unless stated otherwise, ECF citations are to the docket in 24 Civ. 9964.

stated below, the Court consolidates these actions and appoints John Mahoney as lead plaintiff and Levi & Korsinsky, LLP ("Levi & Korsinsky") as lead counsel.

## BACKGROUND

Transocean is a global drilling contractor that owns or operates offshore drilling rigs. Gábor Compl. ¶ 2. Plaintiffs allege that, in 2023 and 2024, Defendants made statements claiming that Transocean was in a strong economic position and that its financial statements accurately estimated the value of its assets. *See id.* ¶¶ 18–29. However, on September 3, 2024, before the market opened, Transocean announced that it had agreed to sell two of its rigs for $342 million, which would result in an impairment of nearly twice that amount, indicating that the assets had not been accurately valued. *Id.* ¶¶ 3, 5, 31. That day, Transocean's share price fell $0.42, or 8.86%, on an "unusually heavy" trading volume. *Id.* ¶ 32.

In December 2024, Mátay Gábor sued Defendants, asserting that they made materially false or misleading statements and failed to disclose material adverse facts about Transocean's business. *See generally* Gábor Compl. In February 2025, David Matteson also sued Defendants, alleging essentially the same facts and causes of action.[2] *See generally* Matteson Compl. Later that month, several putative class members independently moved to consolidate the two actions and for the appointment of themselves and their attorneys as lead plaintiff and lead counsel. ECF Nos. 9, 13, 16, 19. One putative class member subsequently withdrew his motion, ECF No. 26, and another filed a notice of non-opposition to the pending motions, ECF No. 25. Accordingly, the Court must now decide whether the actions should be consolidated and whether putative class members John Mahoney or Patrick Kocher and John Fogel, applying together as

---

[2] The only salient difference between the two complaints is that Gábor alleges a class period of between October 31, 2023, and September 2, 2024, whereas Matteson alleges that the class period started earlier, on May 1, 2023. *Compare* Gábor Compl. ¶ 1, *with* Matteson Compl. ¶ 1.

the "Transocean Investor Group" ("TIG"), should be appointed as lead plaintiff and their attorneys as lead counsel. ECF Nos. 13, 16.

## DISCUSSION

I.     Consolidation

Federal Rule of Civil Procedure 42(a) authorizes a court to consolidate actions when they "involve a common question of law or fact." "In assessing whether consolidation is appropriate in given circumstances, a district court should consider both equity and judicial economy." *Devlin v. Transp. Commc'ns Int'l Union*, 175 F.3d 121, 130 (2d Cir. 1999). "So long as any confusion or prejudice does not outweigh efficiency concerns, consolidation will generally be appropriate." *Stevens v. Hanke*, No. 20 Civ. 8181, 2022 WL 489054, at *2 (S.D.N.Y. Feb. 17, 2022) (citation omitted).

Here, four sets of putative class members have moved for consolidation, and no party opposes it, "a consideration which weighs heavily against the potential for prejudice." *Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007); *see* ECF Nos. 9, 13, 16, 19. The complaints in both cases involve essentially the same facts and alleged misstatements, and resolving these actions separately would be judicially inefficient. Accordingly, consolidation is appropriate. *See Wallace v. IntraLinks Holdings, Inc.*, Nos. 11 Civ. 8861 & 11 Civ. 9528, 2012 WL 1108572, at *1 (S.D.NY. Apr. 3, 2012) (explaining that "consolidation is particularly appropriate in securities class actions"); *Kaplan*, 240 F.R.D. at 91 (consolidating securities class actions despite the complaints alleging different class period start dates).

II.  Lead Plaintiff

    A.  Legal Standard

The Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4 *et seq.*, governs the process for appointing a lead plaintiff in a securities class action. Under the PSLRA, the Court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." *Id.* § 78u-4(a)(3)(B)(i). The Court presumes that the most adequate plaintiff is the person or group of persons that (1) "has either filed the complaint or made a motion in response to a notice [to class members]," (2) "in the determination of the court, has the largest financial interest in the relief sought by the class," and (3) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." *Id.* § 78u-4(a)(3)(B)(iii)(I). This presumption of adequacy can be rebutted only with proof that the presumptive lead plaintiff (1) "will not fairly and adequately protect the interests of the class," or (2) "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id.* § 78u-4(a)(3)(B)(iii)(II).

    B.  Application

        1.  Timeliness

Both Mahoney and TIG made timely motions in response to the PSLRA notice published by Gábor's counsel. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II) (providing that a member of a purported class may move for appointment as lead plaintiff within 60 days after notice of the lawsuit has been published); ECF No. 15-3 (PSLRA notice published on December 26, 2024); ECF No. 13 (Mahoney's motion filed on February 24, 2025); ECF No. 16 (TIG's motion filed on February 24, 2025).

2. Financial Interest

Therefore, the Court considers whether Mahoney or TIG has the larger financial interest. The PSLRA does not prescribe how a court should measure a plaintiff's financial interest, but courts in this District rely on the factors laid out in *Lax v. First Merchants Acceptance Corp.*, Nos. 97 Civ. 2715 *et al.*, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997), and *In re Olsten Corp. Securities Litigation*, 3 F. Supp. 2d 286 (E.D.N.Y. 1998), which are:

> (1) the total number of shares purchased during the class period; (2) the net shares purchased during the class period (in other words, the difference between the number of shares purchased and the number of shares sold during the class period)[;] (3) the net funds expended during the class period (in other words, the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period); and (4) the approximate losses suffered.

*Varghese v. China Shenghuo Pharma. Holdings, Inc.*, 589 F. Supp. 2d 388, 395 (S.D.N.Y. 2008) (quoting *Kaplan*, 240 F.R.D. at 93).

"Financial loss, the last factor, is the most important element of the test." *Id.* There are, however, multiple methods of calculating financial loss. For many years, an "overwhelming" majority of federal courts used the "last in, first out" ("LIFO") method. *Kniffin v. Micron Tech., Inc.*, 379 F. Supp. 3d 259, 264 (S.D.N.Y. 2019) (citation omitted). Under the LIFO method, an investor matches up the latest stock purchases she made during the class period with the earliest stock purchases she made during the class period, thereby offsetting any gains she made due to the stock's artificially inflated price. *Id.* Although the LIFO method is still common today, potential lead plaintiffs are increasingly modifying their LIFO calculations to remove losses from securities that they bought and sold before a defendant's alleged corrective disclosure, as these losses are not connected to a defendant's misconduct and are therefore not recoverable. *Id.*; *see Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (requiring a plaintiff to prove that "the

5

defendant's misrepresentation (or other fraudulent conduct) proximately caused the plaintiff's economic loss"); *Maeshiro v. Yatsen Holding Ltd.*, No. 22 Civ. 8165, 2023 WL 4684106, at *3 (S.D.N.Y. July 21, 2023). This modified LIFO method accounts for the principle that the lead plaintiff should be the class member who stands to recover the most from the actual litigation. *See City of Sunrise Firefighter's Pension Fund v. Citigroup Inc.*, Nos. 20 Civ. 9132 *et al.*, 2021 WL 396343, at *3 (S.D.N.Y. Feb. 4, 2021).

In their opening briefs and attached exhibits, Mahoney and TIG list their losses as follows[3]:

|  | LIFO | Modified LIFO |
|---|---|---|
| Mahoney | $335,096.67 | $335,096.67 |
| TIG | $250,586.03 | -- |
| Kocher | $171,162.95 | -- |
| Fogel | $79,423.08[4] | -- |

ECF Nos. 15-2, 18-3. Although Mahoney presents his loss in LIFO and modified LIFO terms, TIG presents its loss in LIFO terms only. Using LIFO, Mahoney's loss would be greater than Kocher's and Fogel's individual and combined losses.

TIG's opposition papers complicate the picture. For the first time, TIG calculates its modified LIFO losses and computes a new loss measurement for both itself and Mahoney. *See* ECF No. 28 at 4. According to TIG, this new loss measurement, "unlike LIFO, disregards losses from share price declines prior to the corrective disclosure[,] since such price declines are not tied to the alleged fraud and are thus not recoverable." *Id.* at 3 n.3. TIG calls this loss-

---

[3] Both Mahoney and TIG calculate loss using the longer class period beginning on May 1, 2023. ECF No. 14 at 1 n.1; ECF No. 18-3 at 1. The Court agrees that, "[f]or the purpose of determining a lead plaintiff, . . . the use of the longer, most inclusive class period . . . is proper, as it encompasses more potential class members." *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 113 (E.D.N.Y. 2012).

[4] This figure includes losses from both stock- and option-trading. *See* ECF No. 18-3 at 4; *Baxter v. MongoDB, Inc.*, No. 24 Civ. 5191, 2024 WL 4753605, at *4 (S.D.N.Y. Nov. 12, 2024) (including options transactions in the calculation of investor loss).

calculation method, which it takes from a recent opinion authored by the Honorable Paul A. Engelmayer, the "*Canopy Growth* method." *Id.*; *see Turpel v. Canopy Growth Corp.*, 704 F. Supp. 3d 456, 470 (S.D.N.Y. 2023). Incorporating TIG's additional loss-calculation methods, the class members' respective losses are as follows:

|  | LIFO | Modified LIFO | *Canopy Growth* |
|---|---|---|---|
| Mahoney | $335,097 | $335,097 | $43,767 |
| TIG | $250,586 | $431,323 | $171,080 |
| Kocher | $171,163 | $180,623 | $20,540 |
| Fogel | $79,423 | $250,700 | $150,540 |

ECF No. 28 at 4.

Using the modified LIFO method, Mahoney has a greater loss than Kocher and Fogel individually but a smaller loss than TIG as a whole. Using the *Canopy Growth* method, Mahoney has a smaller loss than both Fogel individually and TIG as a whole. Citing these figures, and noting that Fogel bought more shares and net shares and spent a net greater amount on shares than Mahoney, TIG argues that it has the largest financial interest as measured by all four *Lax*/*Olsten* factors. ECF No. 28 at 4–5; *see Varghese*, 589 F. Supp. 2d at 395.

TIG's argument is not without merit. Courts in this District have used the modified LIFO method to calculate loss, and the method, which excludes losses from securities that were bought and sold before the end of the class period, may be superior to the original LIFO. *See* ECF No. 28 at 3–5; *Kniffin*, 379 F. Supp. 3d at 264. Furthermore, the *Canopy Growth* method, although far less common, may best account for the difference between an investor's overall loss and his recoverable loss, the latter of which may better encapsulate a plaintiff's stake in the outcome of the litigation. 704 F. Supp. 3d at 467.

The Court, however, has concerns with TIG's suggested approach. First, the *Canopy Growth* method is inconsistent with the precedent set by the majority of courts in this District,

which maintain a "very strong preference" for using the LIFO method to calculate financial loss. *Simco v. Aegean Marine Petrol. Network Inc.*, Nos. 18 Civ. 4993 & 18 Civ. 5165, 2018 WL 11226076, at *2 (S.D.N.Y. Oct. 30, 2018) (citation omitted). Moreover, the *Canopy Growth* method ignores the price at which an investor purchased a security, relying only on the number of shares retained after a material adverse disclosure and the difference between the pre-disclosure share price and the PSLRA "lookback" price.[5] *Canopy Growth*, 704 F. Supp. 3d at 470 n.7 (calculating a plaintiff's financial stake by multiplying the number of shares purchased by "the per-share diminution in value after the alleged corrective disclosure"). If the Court were to endorse such a methodology, it would "work a radical change in the law," one the Court is unwilling to adopt at this time. *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 277 (S.D.N.Y. 2015); *see San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.*, Nos. 22 Civ. 6339 & 23 Civ. 2910, 2023 WL 3750115, at *6 (S.D.N.Y. June 1, 2023).

Second, allowing TIG to file its original motion alleging one loss figure and then file its responsive papers asserting a different loss figure would encourage the type of gamesmanship the PSLRA was meant to remedy.[6] *See City of Sunrise*, 2021 WL 396343, at *4 (explaining that "courts are especially skeptical of a movant who initially presents one position in their opening brief and switch[es] to another in their opposition after a new movant comes in alleging a greater loss"); *Marquez v. Bright Health Grp., Inc.*, No. 22 Civ. 101, 2022 WL 1314812, at *6

---

[5] The PSLRA's "lookback" provision caps damages at the difference between a security's purchase price and the "lookback" price, the average trading price of the security during the 90-day period following the corrective disclosure. *See* 15 U.S.C. § 78u-4(e)(1); *Acticon AG v. China N.E. Petrol. Holdings Ltd.*, 692 F.3d 34, 38–39 (2d Cir. 2012).

[6] The Court's concern about gamesmanship is exacerbated by the fact that TIG is composed of two investors who lack a pre-litigation relationship, ECF No. 30 at 4, and who were ostensibly grouped together in order to increase the chance that they and their counsel would be appointed lead plaintiffs and lead counsel. *See Brady v. Top Ships Inc.*, 324 F. Supp. 3d 335, 345 (E.D.N.Y. 2018) (explaining that allowing "unrelated investors to join together" could lead to the type of "lawyer-driven litigation" that the PSLRA aims to prevent (citation omitted)).

(E.D.N.Y. Apr. 26, 2022); *San Antonio Fire & Police*, 2023 WL 3750115, at *5. In its opening brief, TIG uses the LIFO method and claims a total loss of $250,586.03, ECF No. 17 at 6; in its opposition brief, it uses the modified LIFO and *Canopy Growth* methods and claims a total loss of either $431,323 or $171,080, ECF No. 28 at 4. The Court does not condone this approach and, therefore, holds TIG to its original LIFO loss calculation of $250,586.03. Accordingly, the Court finds that Mahoney, with a LIFO loss of $335,097, has the largest financial interest in this litigation.

        3.    Rule 23

The Court must next determine whether Mahoney has made a *prima facie* showing that he satisfies Rule 23's requirements. *See Varghese*, 589 F. Supp. 2d at 397 (explaining that, "[a]t this stage in the litigation, a *prima facie* showing that the requirements of Rule 23 are met is sufficient" (italics added)). Although Rule 23(a) lays out four prerequisites for class certification, "typicality and adequacy of representation are the only provisions of Rule 23 relevant to the determination of lead plaintiff under the PSLRA." *Kaplan*, 240 F.R.D. at 94 (alteration adopted) (citation omitted). Typicality is satisfied where the lead plaintiff's claims "arise from the same conduct from which the other class members' claims and injuries arise." *Id.* (quoting *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 102 (S.D.N.Y. 2005)). Adequacy is satisfied where "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Id.*

Mahoney has made a *prima facie* showing that he satisfies Rule 23(a)'s requirements. His claims are typical of the class: He alleges that he purchased Transocean stock during the

class period, that Transocean made materially false or misleading statements that caused its stock price to be inflated, and that he suffered damages when the truth about Transocean emerged. *See* ECF No. 14 at 2–3, 8; *Kaplan*, 240 F.R.D. at 94 ("The underlying conduct from which the class members' claims arise is the same: alleged misrepresentations on the part of the defendants as to the company's worth."). Mahoney has also demonstrated to the Court's satisfaction that he will adequately represent the interests of the class. First, and as discussed below, Mahoney's chosen law firm, Levi & Korsinsky, is highly experienced and qualified to represent the class. Second, the Court sees no potential conflict between Mahoney and the rest of the class. Third, Mahoney alleges that Transocean's misstatements and omissions caused him substantial trading losses, *see* ECF No. 15-2, and he has submitted a declaration affirming that he understands the responsibilities associated with serving as lead plaintiff and is "capable and qualified" to take them on, ECF No. 15-4 ¶¶ 3–6. Because Mahoney made a timely motion to serve as lead plaintiff, has the greatest financial interest in the litigation, and appears to satisfy the applicable requirements of Rule 23(a), he is the presumptive lead plaintiff.

          4.   Rebuttal Evidence

To rebut the presumption that Mahoney should serve as lead plaintiff, an opposing party would need to offer proof that he either "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render [him] incapable of representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). No party has offered such proof. Accordingly, Mahoney shall serve as lead plaintiff.

### III. Lead Counsel

Under the PSLRA, "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v); *see also*

*Varghese*, 589 F. Supp. 2d at 398 ("The PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention." (citation omitted)). Mahoney has retained Levi & Korsinsky to serve as lead counsel for the class. ECF No. 14 at 10. Levi & Korsinsky has "extensive experience litigating securities and shareholder class actions as lead counsel." *Baldwin v. Net 1 UEPS Techs., Inc.*, No. 19 Civ. 11174, 2020 WL 1444937, at *3 (S.D.N.Y. Mar. 25, 2020); *see* ECF No. 14 at 10–11; ECF No. 15-5 (firm resume demonstrating extensive experience with securities class actions). Accordingly, Levi & Korsinsky is appointed lead counsel.

## CONCLUSION

For the foregoing reasons, Mahoney's motion is GRANTED. These actions are CONSOLIDATED under the caption *In re Transocean Ltd. Securities Litigation*, No. 24 Civ. 9964. John Mahoney is APPOINTED as lead plaintiff, and Levi & Korsinsky is APPOINTED as lead counsel. The motions at ECF Nos. 9, 13, 16, and 19 are DENIED in all other respects.

In accordance with the parties' endorsed stipulation at ECF No. 24, by **May 7, 2025**, the parties shall submit a joint letter and proposed case management plan.

The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 9, 13, 16, 19, and 23.

SO ORDERED.

Dated: April 23, 2025
    New York, New York

_____
ANALISA TORRES
United States District Judge