

Hogan Lovells US LLP
390 Madison Avenue
New York, NY 10017
T  +1 212 918 3000
F  +1 212 918 3100
www.hoganlovells.com

August 15, 2025

**By ECF**

Hon. Analisa Torres
Daniel Patrick Moynihan United States Courthouse
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

Re:   <u>**In re Transocean Ltd. Securities Litigation, Case No. 1:24-cv-09964 (AT)**</u>

Dear Judge Torres:

We represent Transocean Ltd. and the individual defendants in the above-captioned case and write pursuant to Sections III(A) and III(B)(iii) of Your Honor's Individual Practices in Civil Cases. On April 23, 2025, the Court appointed John Mahoney as lead plaintiff and Levi & Korsinsky LLP as lead plaintiff's counsel in this securities class action pursuant to the Private Securities Litigation Reform Act of 1995 (the "Reform Act"). ECF No. 32. Two weeks later, on May 8, 2025, the Court entered a case management order giving Plaintiff until July 7, 2025 to file an amended complaint and Defendants until September 5, 2025 to respond to the amended complaint. ECF No. 34. Plaintiff timely filed an Amended Complaint, the operative pleading in this case, on July 7, 2025. ECF No. 38.

On August 1, 2025, Defendants wrote to Plaintiff and explained that the Amended Complaint fails to state a claim under Rule 12(b)(6) and the heightened pleading requirements of Rule 9(b) and the Reform Act. Defendants requested that Plaintiff voluntarily dismiss the Amended Complaint to avoid unnecessary motion practice. On August 8, 2025, Plaintiff declined Defendants' request and explained the reasons that he believes the Amended Complaint satisfies the applicable pleading requirements. Defendants submit this letter to provide the Court with a summary of the grounds on which they intend to move to dismiss the Amended Complaint on September 5, 2025 (as contemplated by the Court's May 8, 2025 case management order).

I.   **Background**

The Amended Complaint identifies two related categories of allegedly false statements concerning certain of the Company's offshore drilling rigs made during a proposed class period of May 1, 2023 through September 2, 2024. First, Plaintiff alleges that Transocean misled investors as to the true "value" of the Discoverer Inspiration (the "Inspiration") and the Development Driller III (the "DD3") because the Company "fail[ed] to record any impairment to [their] recorded asset values" (the "Impairment Allegations"). AC ¶ 2; *see also id.* ¶¶ 65, 72, 80, 87, 97, 107. Second, Plaintiff alleges that Transocean incorrectly reported the Inspiration and the DD3 as "idle but readily available for operations" because "each vessel was in such poor condition that she was not expected to obtain a new contract" (the "Working Condition Allegations"). *Id.* ¶ 2-3; *see also id.* ¶¶ 65, 72, 80, 87, 97, 107. The truth was revealed, Plaintiff contends, when Transocean announced

a September 2024 agreement to sell both vessels to a third party for $342 million, which caused the Company to record an impairment charge of up to $645 million.  *Id.* ¶ 4.[1]

A plaintiff alleging fraud under Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5 "must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'"  *Diesenhouse v. Soc. Learning & Payments, Inc.*, No. 20 Civ. 7436 (LJL), 2022 WL 3100562, at \*4 (S.D.N.Y. Aug. 3, 2022) (quoting *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004)).  The Reform Act requires that "the complaint . . . specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading . . . ."  15 U.S.C. § 78u-4(b)(1).  With respect to scienter, the Reform Act requires that a plaintiff "state with particularity [the] facts giving rise to a strong inference that the defendant acted with the required state of mind."  *Id.* § 78u–4(b)(2).  To qualify as "strong," "'[a]n inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent.'"  *In re Shanda Games Ltd. Sec. Litig.*, 128 F.4th 26, 51 (2d Cir. 2025) (quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 324 (2007)).  Here, the Amended Complaint points to an ordinary course business asset write down and does not come close to pleading a viable securities fraud claim.

## II.    The Amended Complaint Fails to Identify an Actionable False Statement.

### A.    The Impairment Allegations

The Amended Complaint alleges that Transocean misled investors as to the value of the Inspiration and the DD3.  Plaintiff's claim is fatally flawed because Transocean never made any representation about the value of either rig or, for that matter, any other individual asset owned by the Company.  In its SEC filings prepared before, during, and after the Class Period, Transocean disclosed the value of its assets **in total** and never on a rig-by-rig basis.  Transocean did not disclose in its SEC filings or Fleet Status Reports the acquisition cost or current carrying value for any individual rig.  For that reason, the Amended Complaint's assertion that Transocean overstated the value of the Inspiration and the DD3 does not state a Section 10(b) claim.

In addition, Transocean disclosed to investors that, from an accounting perspective, the Company tested potential impairments for rigs that are "held and used" as part of its identified asset groups (not rig-by-rig). Ex. A (2023 10-K)[2] at 37, 49-50.[3]  Only when Transocean classifies

---

[1]     In his August 8, 2025 letter,  Plaintiff characterized the Amended Complaint as alleging that all of Defendants' class period statements were misleading "for the same reason:  they misrepresented the state of Transocean's fleet of assets by presenting the Inspiration and DDIII as working assets that were 'held and used', 'readily available for operations' and 'waiting for the right opportunity.'"

[2]     On Defendants' anticipated motion to dismiss, the Court can consider "statements incorporated by reference, and public disclosure documents filed with the SEC."  *Gamm v. Sanderson Farms, Inc.,* 944 F.3d 455, 462 (2d Cir. 2019).

[3]     The Company's two asset groups are "ultra-deepwater floaters," like the Inspiration, and "harsh environment floaters," like the DD3.  *Id.* at 2, 37; Ex. B (2022 10-K) at 3.  The Amended Complaint does not allege that Transocean failed to disclose an impairment of either ultra-deepwater asset group or the harsh environment asset group as a whole.

a rig as "held for sale" does it test if that individual rig is impaired. *Id.* Here, the Amended Complaint acknowledges that the Inspiration and the DD3 were under contract through April and August 2023. AC ¶¶ 23, 26. When those contracts concluded, Transocean marked each rig as "idle." *Id.*; Ex. C (7/19/23 FSR) at 2; Ex. D (10/18/23 FSR) at 2. On September 3, 2024, Transocean announced an agreement to sell the rigs for $342 million, which would result in an impairment charge of up to $645 million. *See* Ex. E (9/3/24 8-K) at 2. The Amended Complaint does not (and cannot) allege that Transocean marked the Inspiration or the DD3 as "held for sale" at any time prior to September 2024.

### B.        Working Condition Allegations

Plaintiff's allegation that the Inspiration and the DD3 were in substantial disrepair and for that reason not "readily available for operations" and new contracts fares no better. Transocean expressly disclosed the unsurprising fact that ocean drilling ships like the Inspiration and the DD3 require substantial maintenance in the ordinary course of business: "Some idle rigs and all stacked rigs require additional costs to return to service. The actual cost to return to service, which in many instances could be significant and could fluctuate over time, depends on various factors . . . ." Ex. A (2023 10-K) at 2. The Company further disclosed that it makes "substantial capital and operating expenditures to maintain [its] active fleet or to reactivate [its] stacked or idle fleet." *Id.* at 10. The confidential witness ("CW") statements in the Amended Complaint, at best, allege that the Inspiration and the DD3 required the standard maintenance and reactivation costs repeatedly disclosed in the Company's SEC filings.[4] In addition, Transocean's statements (whether express or implied) that the Inspiration and the DD3 were "readily available for operations" and capable of winning new contracts are both forward-looking statements protected by the Reform Act's safe harbor and inactionable opinions under *Omnicare*.[5]

### III.       The Impairment's Impact Was Not Material.

The Amended Complaint also fails to allege facts showing that any alleged false statement was material. In its Form 10-Q filed on August 1, 2024, Transocean reported $24.066 billion in total property and equipment and $17.083 billion net of accumulated depreciation. Ex. F (8/1/24 10-Q) at 3; AC ¶ 102. The Inspiration and the DD3 were 2 of the 36 ships included in that property and equipment calculation. Ex. F (8/1/24 10-Q) at 6. The estimated impairment charge of $645 million associated with the proposed sale lowered the value of Transocean's total property and equipment amount by approximately **2.7%** and the net value by **3.8%**. Further, there is nothing out of the ordinary about the rig transactions – from 2020 to the present, Transocean acquired 3 new rigs and sold or otherwise disposed of 11 rigs (not including the Inspiration or the DD3). Ex.

---

[4]      The estimated original useful life for a Transocean drilling ship is 35 years. Ex. A (2023 10-K) at 49. The DD3 was first put into service in 2009 and the Inspiration followed in 2010. Ex. C (7/19/23 FSR) at 2. This means that the estimated useful lives for those drilling units extended through 2044 and 2045. It is not plausible that these ships were in such a "dilapidated condition" that they were unable to procure new contracts despite decades remaining on their useful lives. AC ¶ 65, 67, 72, 80, 87, 97, 107.

[5]      In his August 8, 2025 letter, Plaintiff pointed to *New England Carpenters Guaranteed Annuity & Pension Funds v. DeCarlo*, 122 F.4th 28 (2d. Cir. 2023) in support of his argument that "readily available for operations" is not an opinion statement under Omnicare. In *DeCarlo*, the defendant issuer restated five years of financial statements after admitting that it improperly recognized revenue and failed to record expenses. *Id.* at 36, 43-47. *DeCarlo* has no application here.

B (2022 10-K) at 55; Ex. A (2023 10-K) at 54; Ex. G (2024 10-K) at 26. Put simply, the sale and impairment charge at issue are ordinary course and not remotely material.[6]

### IV.    The Amended Complaint Fails to Demonstrate a Strong Inference of Scienter.

The Amended Complaint relies exclusively on CW allegations to plead scienter. But the CWs allege, at best, that two rigs operating in the ocean were rusty and (as disclosed in Transocean's SEC filings) required regular maintenance. Ex. A (2023 10-K) at 2-3, 10. Critically, nothing in any of the CW statements show that: (a) the Inspiration and the DD3 were not in fact under contract and generating revenue through April 2023 and August 2023; (b) the rigs were not in fact idle as represented in Transocean's Fleet Status Reports; (c) the maintenance of the rigs was anything other than ordinary course for ocean drilling vessels; (d) Transocean designated the rigs as "held for sale" at any point prior to September 2024; or (e) Transocean was aware of any information sufficient to require and quantify an impairment on the rigs prior to the sale transaction.[7]

In addition, the Amended Complaint alleges no motive whatsoever. There are no allegations that any Transocean insider sold any stock during the Class Period or otherwise attempted to capitalize financially on the alleged fraud. The only cogent and compelling inference arising from the facts alleged is that Transocean designated two rigs as idle when they came off contract in 2023, agreed to sell those rigs in 2024 and, at that time, recorded an ordinary course impairment charge consistent with ASC 360 and the Company's accounting policies.

*    *    *

Defendants are available to answer any questions the Court might have regarding the contemplated motion to dismiss.

---

[6]    Plaintiff incorrectly argued in his August 8, 2025 letter that materiality issues should not be decided at the pleading stage. Courts in this Circuit regularly dismiss securities cases where the alleged omission is immaterial as a matter of law. *See, e.g.*, *ECA, Loc. 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 204 (2d Cir. 2009) (finding a $2 billion reclassification of loans to be immaterial as a matter of law given defendant's $715 billion assets); *In re Duke Energy Corp. Sec. Litig.*, 282 F. Supp. 2d 158, 160-61 (S.D.N.Y. 2003) (holding a 0.3% impact on total revenues to be "an immaterial percentage as a matter of law"), *aff'd*, 113 F. App'x 427 (2d Cir. 2004).

[7]    Plaintiff in his August 8, 2025 letter relies on *zCapEquity Fund LLC v. LuxUrbina Hotels, Inc.*, 2025 WL 2097951 (S.D.N.Y. July 25, 2025) for the proposition that a complaint pleads a strong inference of scienter where it alleges that an executive held himself or herself out in public statements as being highly knowledgeable about the subject of the alleged fraud. The complaint in *zCapEquity*, however, alleged that the executives in question personally negotiated four contracts that the defendant issuer announced as finalized and definitive, but which had never actually been signed. *Id.* at *22. There are no remotely similar allegations in the Amended Complaint in this case.

August 15, 2025

Respectfully submitted,

*/s/ William M. Regan*
William M. Regan

Partner
william.regan@hoganlovells.com
D 212-918-3060

cc:      All counsel of record