

33 Whitehall St., 27th Floor
New York, NY 10004
T: 212-363-7500
F: 212-363-7171
www.zlk.com

Nicholas I. Porritt
nporritt@zlk.com

August 26, 2025

**VIA ECF**

Hon. Analisa Torres
United States District Judge
Unites States District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007

**Re: *In re Transocean Ltd. Securities Litigation*, No. 24 Civ. 9964 (AT)**

Dear Judge Torres:

We respectfully submit this letter in response to the pre-motion letter dated August 15, 2025 filed by Defendants Transocean Ltd., Jeremy D. Thigpen, Mark L. Mey, and Thad Vayda setting forth reasons why they believe the amended complaint filed on July 7, 2025 by lead plaintiff John Mahoney in this action should be dismissed. In response, we state that the amended complaint adequately pleads claims pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a) under the pleading requirements of Federal Rule of Civil Procedure 9(b) and Section 21D of the Act, 15 U.S.C. § 78u-4. This letter provides a summary of the reasons why any motion to dismiss should be denied.

On Rule 12(b)(6) motions to dismiss, courts "accept[] all factual allegations in the complaint as true and draw[] all reasonable inferences in Plaintiffs' favor." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 169 (2d Cir. 2015). Dismissal is only appropriate where Plaintiffs "can prove no set of facts consistent with the complaint that would entitle them to relief." *Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*, 19 F.4th 145, 150 (2d Cir. 2021). Even under the rigorous standards contained in Rule 9(b) and the PSLRA, "we must be careful not to mistake heightened pleading standards for impossible ones." *In re Synchrony Fin. Sec. Litig.*, 988 F.3d 157, 161 (2d Cir. 2021). Applying these standards, lead plaintiff's amended complaint adequately states a claim for securities fraud against defendants.

Defendants identify two sets of statements that they argue are not sufficiently alleged to be misleading: the "impairment allegations" and the "working conditions allegations". The amended complaint alleges that all the misrepresentations identified during the class period were fundamentally misleading for the same reason: they misrepresented the state of Transocean's fleet assets by presenting the *Inspiration* and *DDIII* as working assets that were "held and used", "readily available for operations" and "waiting for the right opportunity". *See, e. g.*, Am. Compl. ¶¶ 63, 66, 71, 73, 77-79, 81-86, 88-96, 97-106. Indeed, on April 30, 2024, Transocean emphasized that the *Inspiration* was not



stacked but instead was merely idle. *Id.*, at ¶ 94. As alleged in the amended complaint and confirmed by former Transocean employees, neither the *Inspiration* nor the *DDIII* were "readily available for operations" or available for a new opportunity because they were so dilapidated and in such poor condition that they could not be contracted and the costs to repair them were prohibitive. By electing to keep the two rigs as "held and used", and thus lumping them in with all Transocean's other working rigs, Transocean was able to hide from investors their true state.

Defendants argue that these statements were not misleading because Transocean discloses that it incurs costs to maintain its rigs and, therefore, lead plaintiff's allegations relate to "standard maintenance repeatedly disclosed" by Transocean. This understates the allegations in the amended complaint. As described by FE4 who was working on the *Inspiration* when she completed her final contract in April 2023, it was known at that time that she would not receive another contract. Am. Compl. ¶ 41. In fall 2023, the *Inspiration* was de-manned entirely. *Id.*, ¶ 34. This is far more than "standard maintenance" and renders the statement that the *Inspiration* was "readily available for operations", as well as other statements regarding her working condition made during the class period, misleading. We note that in its most recent Quarterly Report filed on August 5, 2025, Transocean has impaired the *Inspiration* and *DDIII* by a further $300 million to less than $44 million, even though these vessels have been idle and held for sale since September 2024. Thus their condition should not have materially deteriorated during that period or indeed, during the period since they stopped working in April and August 2023. Thus, during the class period, Transocean accounted for the *Inspiration* and *DDIII* at a value of approximately $971 million when their actual value was less than $44 million.

The statements such as the *Inspiration* and *DDIII* were "readily available for operations" are not forward-looking statements but descriptions of the current state of these vessels. Nor do they qualify as statements of "opinion" as the suitability or otherwise of a vessel to undertake operations is something that can be tested under an objective standard. *New England Carpenters Guaranteed Annuity & Pension Funds v. DeCarlo*, 122 F.4th 28, 41 (2d Cir. 2023). Defendants attempt to distinguish *DeCarlo* but do not argue that this is not the relevant test for whether a statement qualidfies as an opinion. Applying that test, a vessel's readiness for operations is an objective observable fact, as reported by the numerous Transocean former employees cited in the amended complaint. Accordingly, taken collectively, plaintiff's allegations are sufficient to allege that Transocean made misleading misrepresentations and omitted information regarding the *Inspiration* and *DDIII* during the class period. *See Slayton v. Am. Exp. Co.*, 604 F.3d 758, 766 (2d Cir. 2010)(complaint must be considered in its entirety).

Defendants also argue that the alleged misrepresentations and omissions were immaterial to investors, thus requiring dismissal of the amended complaint. "[A] complaint may not properly be dismissed ... on the ground that the alleged misstatements or omissions are not material unless they are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." *DeCarlo*, 122 F.4th at 53 (quoting *Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 162 (2d Cir. 2000)). As a mixed question of law and fact, materiality is "rarely resolved at the motion to dismiss stage." *Setzer v. Omega Healthcare Invs., Inc.*, 968 F.3d 204, 213, n.12 (2d Cir. 2020). Here, the true operational state of two of Transocean's rigs (out of 37 in total) is not so "obviously unimportant" that it can be deemed immaterial as a matter of law. The Second Circuit has expressly rejected any numerical benchmark for materiality such as the 2.7% figure presented in your letter. *Ganino*, 228 F.3d at 162. In addition, the significant decline in the market price of Transocean's stock



immediately following the disclosure of the impairment supports the allegation that the information regarding the poor condition of the *Inspiration* and *DDIII* that was withheld until that disclosure was material to investors. *Id.*, at 167. (Stock price decline after corrective disclosure supports inference of materiality of misrepresentation or omission.)

Finally, defendants argue that the amended complaint does not allege sufficient facts to create a strong inference of scienter, as required by Section 21D. Again, the allegations of the amended complaint must be considered collectively when determing whether there is strong inference of scienter. *Slayton*, 604 F.3d at 766. Here, the primary allegations creating an inference of scienter are the statements by Transocean management during the class period that they were monitoring the *Inspiration* and the *DDIII*, and thus it is a reasonable inference that they were aware of, or deliberately reckless towards, their physical condition. *See* Am. Compl. ¶¶ 63-64, 82-84, 93-96, and 105-106. This knowledge is confirmed by Transocean former employees who describe how management would receive regular reports containing internal assessments of the physical condition of each of Transocean's rigs. *Id.*, at ¶¶ 37 and 39. Such allegations are sufficient to create a strong inference of scienter. *See zCap Equity Fund LLC v. LuxUrban Hotels Inc.*, No. 24 CIV. 1030 (PAE), 2025 WL 2097951, at *22 (S.D.N.Y. July 25, 2025)(strong inference of scienter where management "held themselves out, in multiple public statements, as highly knowledgeable about [the subject of alleged fraud]"). Furthermore, Transocean benefited from the improper categorization of the *Inspiration* and *DDIII* as "held and used" when there was no expectation of a future contract because it enabled Transocean to mask the true state of these two rigs by grouping them for accounting purposes with Transocean's other, active rigs. Thus, Transocean was able to hide for over a year the fact that the *Inspiration* and *DDIII*'s true vale was less than 5% of their recorded value.

Plaintiff is available to answer any questions the Court may have regarding the contemplated motion to dismiss. Plaintiff apologizes for filing this response letter after the five-day period set forth in the Court's Individual Practices but notes that by the Court's May 8, 2025 Case Management Order, a schedule for briefing the motion to dismiss has already been set. Plaintiff was accordingly uncertain whether the provisions of Individual Practice III.A.ii which provides for setting a briefing schedule still applied following the Case Management Order. Plaintiff regrets any inconvenience caused to the Court by the delay.

Sincerely,

LEVI & KORSINSKY LLP

Nicholas I. Porritt