**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re TRANSOCEAN SECURITIES LITIGATION | Case No. 1:24-cv-09964 (AT) |

**SUR-REPLY IN RESPONSE TO THE DECLARATION OF BAHAA EL-DIN NOUH AND IN FURTHER OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

### I.    PRELIMINARY STATEMENT

Lead Plaintiff John Mahoney ("Plaintiff") respectfully submits this sur-reply to address the declaration of Former Employee 3 ("FE3") in the Amended Complaint ("AC"), Bahaa El-Din Nouh ("Nouh," the "Nouh Declaration"). In their reply, Defendants proffer the Nouh Declaration as a basis to discount allegations in the Amended Complaint. However, properly understood, it does not retract Nouh's prior statements and in fact confirms Plaintiff's theory of scienter, that senior management received detailed information about the status and prospects of the *Discoverer Inspiration* and *Development Driller III* ("*DD3*").  Moreover, since Defendants require the Court to make credibility assessments and to weigh the evidence, their request is improper at the motion to dismiss stage, and the Court should strike the Nouh Declaration.  For all these reasons and because the Nouh Declaration does not undermine the Amended Complaint, which is well-pleaded and supported by multiple former employee accounts, the Court should deny Defendants' Motion to Dismiss in its entirety.

### II.    ARGUMENT

#### A. THE NOUH DECLARATION IS A COLLATERAL ATTACK ON THE AMENDED COMPLAINT AND SHOULD BE STRICKEN BY THE COURT.

At the motion to dismiss stage, a court assumes all well-pleaded facts to be true and draws all reasonable inferences in favor of the non-moving party. *See Koch v. Christie's Int'l PLC*, 699

F.3d 141, 145 (2d Cir. 2012). A court "must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991); *Micholle v. Opthotech Corp.*, 2019 WL 4464802, at *6 (S.D.N.Y. Sept. 17, 2019) (the court may consider allegations contained within the four corners of the complaint). It may not consider exhibits for the purpose of providing a counter-narrative of the facts as alleged in the complaint. *See Smith v. Factory Direct Enter. LLC*, 2019 WL 4221059, at *4 (E.D.N.Y. Sept. 5, 2019) (declining to review external sworn statements, which would involve credibility assessments and weighing of the evidence).

By submitting the Nouh Declaration, Defendants have inappropriately attempted to transform "the [dismissal] inquiry into a summary-judgment proceeding – one featuring a bespoke factual record, tailor-made to suit the[ir] needs[.]" *Goel v. Bunge, Ltd.*, 820 F.3d 554, 560 (2d Cir. 2016). The Nouh Declaration is aimed at the presentation in the Amended Complaint of his statements as well as statements by other former employees. His primary complaint is that the Amended Complaint quotes only "selective parts" of his answers, that his responses were to hypothetical questions, and that a non-technical investigator may have misunderstood his technical explanations. These are merits arguments about weight and credibility, not pleading sufficiency, and should be discounted. Rather than contradict the multiple, consistent accounts from other former employees regarding rust, disrepair, and the non-strategic status of the *Discoverer Inspiration* and *DD3*, the Nouh Declaration, as drafted by Defendants' counsel, aims to rebut claims purportedly made in the Amended Complaint that rigs in use do not require maintenance or any rust is an indication of disrepair. ECF 54-1, at ¶ 11. The Amended Complaint, however, does not make these claims and the Court should ignore Defendants' straw man arguments.

The declaration is, at most, an attempt to create a factual dispute about how to interpret and credit former-employee testimony. Defendants will have the opportunity to put forward their purported evidence during discovery, but the Court should reject efforts to inject it at this stage and strike the Nouh Declaration. Failing to do so would give Defendants an unfair advantage of introducing facts outside the Amended Complaint while Plaintiff's hands are tied during the PSLRA's stay on discovery. 15 U.S.C. §78u-4(b)(3)(B).

## B. NOUH DOES NOT RENEGE ON HIS STATEMENTS.

In his declaration, Nouh confirms that he was FE3 in the Amended Complaint, employed as Transocean's Director of Technical Services and Engineering, and that he spoke to Plaintiff's investigator and that she identified herself as such. ECF 54-1, ¶¶ 1-3.  He also does not deny the accuracy of the quotations attributed to him such as that "the decision to divest a rig was such a large decision that the CEO and CFO were definitely involved."  AC ¶ 35. And he does not purport to retract his factual observations that senior Transocean management, including the Individual Defendants, regularly received rig-specific information, such as internal condition ratings for each vessel and Bid Assessment Sheets for each potential contract, covering the *Discoverer Inspiration* and *DD3* throughout the Class Period.  *Id.*, at ¶¶ 37, 39. Instead, he asserts that (1) the Amended Complaint does not reproduce the investigator's questions and (2) the investigator, a non-technical person, may not have fully understood his technical explanations. ECF 54-1, ¶ 6. Those process complaints do not render his statements about Transocean's rigs and management practices false (AC ¶¶ 33, 37-39), nor do they impact the well-pleaded allegations that senior management knew the challenged statements about the *Discoverer Inspiration* and *DD3* were false or misleading.

3

### C.  THE AMENDED COMPLAINT DOES NOT RELY ON NOUH'S STATEMENTS REGARDING RUST.

The Amended Complaint squarely pleads that the rigs were non-operational "rust buckets," without any need to credit or rely on Nouh's characterizations. Those issues were addressed by other former employees in their interviews with the investigator. FE1 worked in the project sector of Transocean's accounting department from April to October 2024, serving as the liaison between accounting and project managers to ensure repair projects were properly budgeted. AC ¶ 31. FE1 stated that during her tenure no repair projects were underway for the *Discoverer Inspiration* or *DD3*, and that projects of $5 million or more required approval from the CEO, Defendant Thigpen. *Id*. While FE2, *and not Nouh*, described the *Discoverer Inspiration's* visible deterioration during that period based on on-site observations and reports from crew working directly on the rig. *Id*. FE2 stated that by December 2023, the *Discoverer Inspiration* was a "rust bucket" and was in such a poor state that it would not be worthwhile for Transocean to invest money repairing her. *Id*. FE7, a subsea engineering superintendent on the *Discoverer Inspiration*, describes repeated deployments to remove rust and repaint moonpools, notes that angle irons were disintegrating and tracks were so rusty they were difficult to move, and compares the rig to a "wrecked car" whose core components might still run but whose obvious physical disrepair signaled that its remaining life was limited to four to five years absent significant ongoing paint and maintenance. AC ¶¶ 52-56.

Those allegations, drawn from multiple former employees with first-hand, technical experience on the *Discoverer Inspiration* and *DD3* over many years, are more than sufficient at the pleading stage to support an inference that Defendants' characterizations were materially misleading, regardless of Nouh's after-the-fact clarification that, in the abstract, "even brand-new rigs straight from the shipyard have rust." ECF 54-1, ¶ 11.

### D. NOUH CONFIRMS MANAGEMENT KNOWLEDGE.

Nouh does not retract the core point from his interview that senior management received regular information about fleet condition and opportunities, including for the *Discoverer Inspiration* and *DD3*, and thus knew, or were reckless in not knowing, that public statements about those rigs were inconsistent with their true status. His declaration emphasizes that he was a fleet-wide technical expert, responsible for providing day-to-day technical support and provided advice on modifications required for bidding opportunities, and that such work occurred as part of Transocean's internal process for assessing specific projects for the *Discoverer Inspiration* and *DD3*. ECF 54-1, ¶¶ 7, 10.

The Amended Complaint alleges that each vessel was given an internal condition rating provided to the CEO and COO, and that a Bid Assessment Sheet showing expected profit or loss for each rig went to those same executives for final assessment. Nouh's insistence that he was consulted on technical issues for specific bids and that he was continuously marketing the rigs by evaluating modifications for opportunities in Brazil (*DD3*) and the Gulf of Mexico (*Discoverer Inspiration*) dovetails with, rather than contradicts, those allegations that senior management received regular, rig-specific updates and made high-level decisions about stacking, scrapping, and asset classification. Attempting to minimize the investigator's questions as a hypothetical also does not undermine the fact that Transocean's CEO and CFO would be involved in decision to divest from a rig. AC ¶ 35; ECF 54-1, ¶ 9. At the motion to dismiss stage, these consistent facts support, instead of defeat, a strong inference of scienter.

### III. CONCLUSION

For these reasons, and because the Amended Complaint remains well-pleaded and supported by multiple, mutually reinforcing former employee accounts, the Defendants have failed

to meet their burden under Rule 12(b)(6), and the Court should deny their Motion to Dismiss in its entirety.

Respectfully submitted,

Dated: December 12, 2025                    **LEVI & KORSINSKY, LLP**

*/s/ Max E. Weiss*
Nicholas I. Porritt
Max E. Weiss
nporritt@zlk.com
mweiss@zlk.com
33 Whitehall Street, 27th Floor
New York, New York 10004
Tel.: (212) 363-7500
Fax: (212) 363-7171

*Attorneys for Plaintiff*

## <u>LOCAL RULE 7.1 CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel of record for Lead Plaintiff John Mahoney certifies that the foregoing Sur-Reply in Response to the Declaration of Bahaa El-Din Nouh and in Further Opposition to Defendant's Motion to Dismiss contains 1438 words, which complies with the word limit of Local Rule 7.1(c) of the Southern and Eastern Districts of New York and Section III(D) this Court's Individual Practices in Civil Cases.

Dated: December 12, 2025

*/s/ Max E. Weiss*
   Max W. Weiss